**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SHERRY LYNN STREET,**

**Plaintiff,**

**v.** **CASE NO:**

**MARTINEZ & COMPANY, INC.,**

**Defendant.**
_______________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SHERRY LYNN STREET, (hereinafter "Plaintiff" or "Ms. Street"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, MARTINEZ & COMPANY, INC. (hereinafter "Defendant," "Martinez & Company," or "Company") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendant, her former employer, seeking to recover damages for unlawful discrimination based on disability, failure to accommodate, and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2. As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against her, failed to provide a reasonable accommodation, failed to engage in the interactive process, altered the terms, conditions, and privileges of her employment because of her disability, and retaliated against her for requesting a reasonable accommodation and otherwise engaging in protected activity, in violation of her rights under the ADA and the FCRA.

3. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4. Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a)

and the principles of pendent jurisdiction.

6. This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Hillsborough County, Florida.

**PARTIES**

8. Plaintiff is SHERRY LYNN STREET, a female who resides in Tampa, Hillsborough County, Florida, and who suffers from Factor V, a condition requiring her to take blood thinners, a vascular condition managed with stents, and a vitamin deficiency disorder. These conditions substantially limit one or more major life activities and require her to avoid prolonged exposure to extreme cold and extreme heat.

9. Plaintiff is a member of a class protected against discrimination and retaliation based on her disability under the ADA and the FCRA.

10. Defendant employed Plaintiff as a full-time Unarmed Maritime Security Officer beginning on November 6, 2024, and continuing until her termination effective September 26, 2025.

11. At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12. At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA and the FCRA.

13. The Defendant, MARTINEZ & COMPANY, INC., is a Florida corporation with a principal place of business located at PO Box 141536, Tampa, FL 33684, and regularly conducts business as a maritime and port security company in Hillsborough County, Florida.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Hillsborough County, Florida, and employed fifteen or more employees.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state

statutes including, but not limited to, the ADA and the FCRA.

16. Accordingly, Defendant is liable under the ADA and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On April 17, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation.

19. On July 31, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights in reference to her Charge of Discrimination (EEOC Charge No. 511-2025-02659) against Defendant.

20. This action is being filed within ninety (90) days of Plaintiff's receipt of the Determination and Notice of Rights from the EEOC.

21. More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore,

Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

22. All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

23. Plaintiff suffers from Factor V, a condition that requires her to take blood thinners, a vascular condition managed with stents, and a vitamin deficiency disorder. These conditions substantially limit one or more major life activities and require Plaintiff to avoid prolonged exposure to extreme cold and extreme heat, which cause her to experience muscle cramping, difficulty breathing, and headaches.

24. On November 6, 2024, Plaintiff began her employment with Defendant as a full-time Unarmed Maritime Security Officer, working at Defendant's maritime and port client locations in Hillsborough County, Florida, including Port Redwing.

25. Throughout her employment, Plaintiff performed her job duties satisfactorily. Plaintiff was never placed on probation, never received a reprimand, and never received anything lower than "meets expectations" on

a performance evaluation.

26. On November 28, 2024, while performing her work duties at a maritime post, Plaintiff was involved in a serious workplace accident. In the dark, without adequate lighting or a guardrail marking the end of the dock, Plaintiff fell into the water. Plaintiff remained in the cold water for approximately thirty minutes while personnel worked out how to remove her, and no flotation device was thrown to her while she struggled to stay afloat fully clothed.

27. As a result of the November 28, 2024 accident, Plaintiff sought medical treatment and a workers' compensation claim was opened with Defendant's workers' compensation carrier.

28. On December 20, 2024, Plaintiff submitted to her supervisor a note from her treating physician, Dr. Shabnam Zahedi, MD, of Dedicated Senior Medical Center, stating that Plaintiff "requires a warm and sheltered work environment due to ongoing health conditions." By submitting this note, Plaintiff informed Defendant of her medical condition and requested a reasonable accommodation.

29. Following Plaintiff's accommodation request, Defendant held a conference call with Plaintiff on or about January 2, 2025, and reassigned

Plaintiff from her maritime and port duties to an indoor post at the Egypt Lake Library in Hillsborough County, Florida.

30. Beginning on or about January 6, 2025, Plaintiff worked at the Egypt Lake Library post. As a result of the reassignment, Plaintiff's hourly rate dropped from more than $19.00 per hour to $17.55 per hour, and her shifts were reduced from eight or more hours per day to approximately 3.75 hours per day.

31. On February 10, 2025, Defendant removed Plaintiff from the Egypt Lake Library post after the post was changed to require an armed license, which Plaintiff did not hold. After being removed from that post, Plaintiff was not given a schedule or another post.

32. On February 10, 2025, during a conference call, Defendant's Vice President of Operations, John Dardano, made remarks mocking Plaintiff's fall into the water. The following day, February 11, 2025, Plaintiff emailed Defendant's Human Resources department requesting, "With respect John, Sir If I could ask one thing that we stop making light of the accident, because it was very scary." Defendant took no meaningful corrective action in response to Plaintiff's complaint.

33. On February 21, 2025, Defendant, through its Human Resources

department, emailed Plaintiff stating that "we are resetting your previous accommodation request." Defendant required Plaintiff to submit a completed, signed accommodation request form and a completed ADA Accommodation Medical Certification from her healthcare provider, initially by March 7, 2025.

34. On February 28, 2025, Plaintiff requested additional time to submit the paperwork because she could not obtain a physician appointment until March 11, 2025. Defendant extended the deadline to March 14, 2025.

35. On March 14, 2025, Plaintiff submitted her completed ADA Reasonable Accommodation Request Form, together with her workers' compensation medical forms and a letter from Dedicated Senior Medical Center. In her request, Plaintiff sought "Shelter from extreme weather conditions" and identified her limitation as permanent with no anticipated recovery date.

36. On the completed form, Plaintiff explained that without accommodation, prolonged exposure to extreme cold and extreme heat causes her muscle cramping, difficulty breathing, and headaches, and that the accommodation "would allow me to do my Job without any downtime."

37. Plaintiff was unable to obtain the completed ADA Accommodation Medical Certification through no fault of her own. On March 13, 2025, Dedicated Senior Medical Center advised in writing that, "Due to the departure of DR ZAHEDI, MS. STREET'S Primary Care Physician, her reasonable accommodations packet cannot be completed at this time," and that the medical center was in the process of establishing Plaintiff with another in-house primary care physician.

38. On March 12, 2025, Plaintiff notified Defendant that her primary care physician had unexpectedly left the practice and that her appointment had been cancelled without notice.

39. On March 20, 2025, Plaintiff advised Defendant that the earliest appointment she could obtain with her new primary care physician was in May 2025, and asked Defendant to obtain any needed clarification from her hematologist regarding the type of reasonable accommodation she needed.

40. Defendant did not thereafter engage with Plaintiff in a good faith interactive process to identify a reasonable accommodation, and did not communicate further with Plaintiff regarding her accommodation request until Defendant terminated her employment.

41. On September 26, 2025, Defendant terminated Plaintiff's

employment. In the termination communication, Defendant stated that it was "unable to accommodate your requested ADA accommodation at this time because we did not receive the required physician evaluation specifying your work limitations and parameters," that "there are no open positions within the company that provide a warm, sheltered environment," and that "there has been no communication since March."

42. Defendant's stated reasons for terminating Plaintiff were false and pretextual. Plaintiff had timely engaged in the accommodation process, had submitted the documentation she was able to obtain, had explained the circumstances beyond her control that prevented completion of the medical certification, and had asked Defendant to obtain clarification directly from her physicians.

43. Defendant's own written policies confirm the unlawfulness of its conduct. Defendant's ADA/ADAAA Policy provides that Defendant "prohibits retaliation or discrimination against any employee for requesting an accommodation, participating in the interactive process, or opposing discrimination under the ADA/ADAAA," and that it is Defendant's responsibility "to engage in the interactive process in good faith" and "to provide reasonable accommodations unless it causes undue hardship."

44. At all times relevant herein, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position, with or without reasonable accommodation.

45. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, and damage to her professional reputation.

**COUNT I**
**Violation of the Americans with Disabilities Act**
**Disability Discrimination / Failure to Accommodate**
**42 U.S.C. §§ 12101-12213**

46. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

47. At all times material, Defendant was an employer within the meaning of the ADA.

48. Plaintiff has a disability within the meaning of the ADA in that she has a physical impairment that substantially limits one or more major life activities.

49. At all times material, Plaintiff was a qualified individual with a disability who could perform the essential functions of her position as a

security officer, with or without reasonable accommodation.

50. On December 20, 2024, Plaintiff notified Defendant of her disability and requested a reasonable accommodation in the form of a warm and sheltered work environment.

51. On March 14, 2025, Plaintiff submitted a completed ADA Reasonable Accommodation Request Form seeking shelter from extreme weather conditions.

52. Plaintiff's requested accommodation was reasonable and would have allowed her to safely perform the essential functions of her job.

53. Defendant had notice of Plaintiff's disability and accommodation need but failed to provide a reasonable accommodation and failed to engage in good faith in the interactive process required under the ADA.

54. Plaintiff was unable to obtain the completed medical certification demanded by Defendant because her primary care physician unexpectedly left the practice, a circumstance beyond Plaintiff's control that Plaintiff timely communicated to Defendant.

55. Rather than continue the interactive process or obtain clarification from Plaintiff's physicians as Plaintiff requested, Defendant

reassigned Plaintiff to a lower-paying post with reduced hours, removed her from the schedule, and ultimately terminated her employment.

56. Defendant took the foregoing actions against Plaintiff because of her disability.

57. Defendant's conduct constituted unlawful discrimination against Plaintiff on the basis of disability, and a failure to accommodate, in violation of the ADA.

58. As a direct and proximate result of Defendant's discriminatory conduct and failure to accommodate, Plaintiff has suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

**COUNT II**
**Violation of the Americans with Disabilities Act**
**Retaliation**
**42 U.S.C. §§ 12101-12213**

59. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

60. At all times material, Defendant was an employer within the meaning of the ADA.

61. Plaintiff engaged in protected activity under the ADA by disclosing her disability, requesting a reasonable accommodation, and complaining about the mistreatment she experienced in connection with her disability and her accommodation request.

62. Defendant knew of Plaintiff's protected activity.

63. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including reassigning her to a lower-paying post with reduced hours, removing her from the schedule, failing to provide her with a post, and terminating her employment.

64. The adverse actions taken against Plaintiff were materially adverse in that they would dissuade a reasonable employee from requesting an accommodation or otherwise engaging in protected activity under the

ADA.

65. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions.

66. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the ADA.

67. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

## COUNT III
## Violation of the Florida Civil Rights Act
## Disability Discrimination / Failure to Accommodate
## Fla. Stat. §§ 760.01-760.11

68. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

69. At all times material, Defendant was an employer within the

meaning of the FCRA.

70. Plaintiff has a handicap or disability within the meaning of the FCRA in that she has a physical impairment that substantially limits one or more major life activities.

71. At all times material, Plaintiff was able to perform the essential functions of her position, with or without reasonable accommodation.

72. Plaintiff notified Defendant of her disability and requested a reasonable accommodation in the form of a warm and sheltered work environment.

73. Plaintiff's requested accommodation was reasonable and necessary to permit Plaintiff to safely perform her job.

74. Despite notice of Plaintiff's disability and accommodation need, Defendant failed to provide a reasonable accommodation and failed to engage in the interactive process.

75. Defendant thereafter reassigned Plaintiff to a lower-paying post with reduced hours, removed her from the schedule, and terminated her employment because of her disability.

76. Defendant thereby discriminated against Plaintiff because of her disability in the terms, conditions, and privileges of employment, and

failed to accommodate her, in violation of the FCRA.

77. As a direct and proximate result of Defendant's disability discrimination and failure to accommodate, Plaintiff has suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages as allowed by law and within any applicable statutory limits, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

**COUNT IV**
**Violation of the Florida Civil Rights Act**
**Retaliation**
**Fla. Stat. §§ 760.01-760.11**

78. Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

79. At all times material, Defendant was an employer within the meaning of the FCRA.

80. Plaintiff engaged in protected activity under the FCRA by

disclosing her disability, requesting a reasonable accommodation, and complaining about the mistreatment she experienced in connection with her disability and her accommodation request.

81. Defendant knew of Plaintiff's protected activity.

82. After Plaintiff engaged in protected activity, Defendant subjected Plaintiff to materially adverse actions, including reassigning her to a lower-paying post with reduced hours, removing her from the schedule, failing to provide her with a post, and terminating her employment.

83. The adverse actions taken against Plaintiff were materially adverse in that they would dissuade a reasonable employee from engaging in protected activity under the FCRA.

84. There is a causal connection between Plaintiff's protected activity and Defendant's materially adverse actions.

85. Defendant's conduct constituted unlawful retaliation against Plaintiff in violation of the FCRA.

86. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered damages, including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, loss of dignity, and other pecuniary and non-pecuniary losses.

**WHEREFORE**, Plaintiff demands judgment against Defendant for declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages as allowed by law and within any applicable statutory limits, pre-judgment and post-judgment interest, attorneys' fees, costs, and all further relief the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 29th day of September 2026.

*/s/ Jason W. Imler, Esq.*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com